DAVID E. KLEINFELD (SBN 110734)
dkleinfeld@foley.com
FOLEY & LARDNER LLP
11250 El Camino Real, Suite 200
San Diego, California 92130
Tel: 858.847.6700
Fax: 858.792.6773

ROBERT S. WEISBEIN (pro hac vice)
rweisbein@foley.com
FOLEY & LARDNER LLP
90 Park Avenue
New York, New York 10016-1314
Tel: 212.682.7474
Fax: 212.687.2329

Attorneys for Defendants Sara Lee Corporation,
Sara Lee Bakery Group, Inc., and
Earthgrains Baking Companies, Inc.

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BBU, INC., BIMBO BAKERIES USA, INC., ARNOLD PRODUCTS, INC., ARNOLD SALES COMPANY, INC., and ARNOLD FOODS COMPANY, INC.,<br><br>                    Plaintiffs,<br><br>          v.<br><br>SARA LEE CORPORATION, SARA LEE BAKERY GROUP, INC. EARTHGRAINS BAKING COMPANIES, INC., and DOES 1-10, inclusive,<br><br>                    Defendants. | Case No: 09-CV-1787-DMS (RBB)<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>Judge:          Hon. Dana M. Sabraw<br>Hearing Date: September 11, 2009<br>Time:           1:30 p.m.<br>Courtroom:    10 |

## **TABLE OF CONTENTS**

I.  Introduction……………………………………………………………………..……1

II.  Statement of Facts…………..……………………………………………..………....2

    A.  Sara Lee's EARTHGRAINS Brand……………………………………....…………2

        1.  EARTHGRAINS Packaging……………………………………………...3

    B.  The Plaintiffs' ARNOLD Brand……………………………………………..…3

        1.  ARNOLD SELECT Packaging……………………………………………4

    C.  Interaction Between ARNOLD and EARTHGRAINS Brands………….……....4

    D.  Arnold's Trademark Registration for SANDWICH THINS…………………....6

    E.  Third Party "Thins" Use……………………………………………………………6

        1.  Trademarks Incorporating the Term "Thins"………….…..……….…........6

        2.  Additional Common Law Uses of the Term "Thins"………..…..……….7

    F.  Sara Lee's Adoption of the Term "Thins"…………………………………....8

    G.  Arnold's Mischaracterization of Sara Lee's Product Name………………….…9

III.  Legal Argument…………………………………………………………………9

    A.  Plaintiffs Cannot Succeed on the Merits In This Action…………….....………10

        1.  Sara Lee's Use of the Term "Thins" is a Permissible Fair Use…..…….....10

            a.  Sara Lee Does Not Use the Term "Thins" as a Trademark ….......10

            b.  The Term "Thins" Describes Sara Lee's Thin Buns….................11

            c.  Sara Lee's Use Is Fair and In Good Faith…………………….…12

    B.  Arnold Cannot Show a Likelihood of Confusion………………....…...…..…13

        1.  Arnold's Mark Does Not Deserve Strong Protection…………………....13

        2.  The Marks Are Not Similar……………………………………………...16

        3.  Proximity of the Goods…..…………………………………………....18

        4.  There Is No Evidence of Confusion…………………………….......…19

        5.  The Marketing Channels Are Different…………………………………19

        6.  Consumers Are Likely to Use a High Degree of Care ..……………….20

        7.  Sara Lee Had No Intent to Infringe……………………..…..…....…21

i

8.    There Is No Plan to Expand the Product Line………...…………………21

C.    Plaintiffs Have Not Demonstrated Irreparable Harm……………………………...22

D.    The Balance of the Equities Favors the  Defendants......…………….……………23

IV.    The Requested Injunction Is Not in the Public's Interest...................................................25

V.    Arnold Should Post at Least $5,000,000 For Bond............................................................25

VI.    Conclusion.........................................................................................................................25

# **TABLE OF AUTHORITIES**

## **CASES**

*Alpha Indus., Inc. v. Alpha Steel Tube & Shapes, Inc.,*
    616 F.2d 440 (9th Cir. 1980)........................................................................15, 16

*AMF Inc. v. Sleekcraft Boats,*
    599 F.2d 341 (9th Cir. 1979)...................................................................*Passim*

*Bayline Partners, L.P. v. Weyerhaueser Co.,*
    31 U.S.P.Q.2d 1051 (N.D. Cal. 2004)................................................................22

*Bell v. Harley Davidson Motor Co.,*
    539 F. Supp.2d 1249 (S.D. Cal. 2008)............................................10, 11, 12, 21

*B&L Sales Assoc. v. H. Daroff & Sons, Inc.,*
    421 F.2d 352 (2d Cir. 1969)..............................................................................10

*Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.,*
    174 F.3d 1036 (9th Cir. 1999)...........................................................................13

*Cairns v. Franklin Mint Co.,*
    24 F.Supp.2d 1013 (C.D. Cal. 1998).................................................................19

*Caribbean Marine Servs. Co. v. Baldridge,*
    844 F.2d 668 (9th Cir. 1988).............................................................................23

*Citrus Group, Inc. v. Cadbury Beverages, Inc.,*
    781 F.Supp. 386 (D. Md. 1991)............................................................10, 12, 25

*Cohn v. Petsmart, Inc.,*
    281 F.3d 837 (9th Cir. 2002).............................................................................17

*Corbitt Mfg. Co., Inc. v. GSO America, Inc.,*
    197 F.Supp.2d 1368 (S.D. Ga. 2002).................................................................11

*Cosmetically Sealed Indus., Inc. v. Chesebrough-Pond's USA Co.,*
    1254 F.3d 28 (2d Cir. 1997)..............................................................................12

*Dual Deck-Video Cassette Recorder,*
    11 F.3d 1460 (9th Cir. 1993).............................................................................11

*Eacceleration Corp. v. Trend Micro, Inc.,*
    408 F. Supp. 2d 1110 (W.D. Wash. 2006).........................................................21

*Eli Lilly and Co. v. Revlon, Inc.,*
    577 F.Supp. 477 (S.D.N.Y. 1983)................................................................11, 24

iii

*Filipino Yellow Pages, Inc. v. Asian J. Publ'ns, Inc.,*
    198 F.3d 1143 (9th Cir. 1999)........................................................................14

*Fruit of the Loom, Inc. v. Girouard,*
    994 F.2d 1359 (9th Cir. 1993)........................................................................16

*General Mills, Inc. v. Kellog Co.,*
    824 F.2d 622 (8th Cir. 1987)...................................................................13, 21

*GoTo.com, Inc. v. Walt Disney Co.,*
    202 F. 3d 1199 (9th Cir. 2000).......................................................................14

*Guichard v. Universal City Studios, LLP, No. C 06-6392 JSW, 2007 WL 1750216*
    (N.D. Cal. June 15, 2007)...............................................................................23

*Herbalife Int'l, Inc. v. Lumene N. Am. LLC, No. 07-5040 AHM (RCx), 2007 WL 4225776*
    (C.D. Cal. Oct. 15, 2007)................................................................................20

*Instant Media, Inc. v. Microsoft Corp.,*
    2007 WL 2318948, No. C07-02639 (N.D. Cal. August 13, 2007)...................19

*Int'l Stamp Art, Inc. v. United States Postal Serv.,*
    456 F.3d 1270 (11th Cir. 2006)......................................................................12

*KP Permanent Make-Up, Inc. v. Lasting Impressions, Inc.,*
    408 F.3d 596 (9th Cir. 2005)..........................................................................14

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.,*
    543 U.S. 111 (2004).......................................................................................10

*Los Angeles Memorial Coliseum Comm., v. Nat'l Football League,*
    632 F.2d 1197 (9th Cir. 1980)........................................................................23

*M2 Software, Inc. v. Madacy Entm't,*
    421 F.3d 1073 (9th Cir. 2005)........................................................................22

*Matrix Motor Co. v. Toyota Jidosha Kabushiki Kaisha,*
    290 F. Supp. 2d 1083 (C.D. Cal. 2003)..............................................13, 18, 21

*Mazurek v. Armstrong,*
    520 U.S. 968 (1997).........................................................................................9

*Nintendo of America, Inc. v. Lewis Galoob Toys, Inc.*
    16 F.3d 1032 (9th Cir. 2004)..........................................................................25

*Nora Beverages, Inc. v. Perrier Group of Am., Inc.,*
    269 F.3d 114 (2d Cir. 2001)...........................................................................21

iv

*Nutrishare, Inc. v. BioRx, LLC,* No. 08 CV 1493 JM (BLM), 2008 WL 4748109
    (S.D. Cal. (Oct. 23, 2008)...............................................................................13

*Nutri/Sys., Inc. v. Con-Stan Indus., Inc.,*
    809 F.2d 601 (9th Cir. 1987)....................................................................14, 15, 20

*Ocean Garden, Inc. v. Marktrade Co.,*
    953 F.2d 500 (9th Cir. 1991)..............................................................................14

*Official Airline Guides, Inc. v. Goss,*
    6 F.3d 1385 (9th Cir. 1993)................................................................................16

*Packman vs. Chicago Tribune Co.,*
    267 F.3d 628 (7th Cir. 2001)..............................................................................11

*Parenting Unlimited, Inc. v. Columbia Pictures Television,*
    743 F. Supp. 221 (S.D.N.Y. 1990)................................................................13, 21

*Perfumania, Inc. v. Perfumay, Inc.,*
    23 F.3d 248 (9th Cir. 1994)................................................................................18

*Playboy Enterprises, Inc. v. Netscape Communications Corp.,*
    55 F. Supp. 2d 1070 (C.D. Cal. 1999)................................................................19

*Playmakers LLC v. ESPN, Inc.,*
    376 F.3d 894 (9th Cir. 2004)........................................................................13, 16

*Playmakers LLC v. ESPN, Inc.,*
    297 F. Supp. 2d 1277 (W.D. Wash. 2003)..........................................................18

*Rodeo Collection Ltd., W. Seventh,*
    812 F.2d 1215 (9th Cir. 1987)......................................................................13, 22

*Sardi's Restaurant Corp. v. Sardie,*
    755 F.2d 719 (9th Cir. 1985)..............................................................................22

*Schmid Labs. V. Youngs Drug Prods. Corp.,*
    482 F. Supp. 14 (D.N.J. 1979)...........................................................................11

*Sunenblick v. Harrell,*
    895 F.Supp. 616 (S.D.N.Y. 1995)......................................................................19

*Two Pesos, Inc. v. Taco Cabana, Inc.,*
    505 U.S. 763 (1992)..........................................................................................14

*Winter v. Nat. Res. Defense Council, Inc.,*
    129 S. Ct. 365 (2008) .........................................................................................9

v

*W.W.W.Pharmaceutical Co., Inc. v. Gillette Co.,*
    984 F2d 567 (2d Cir. 1993)...............................................................................21

## **STATUTES**

15 U.S.C. § 1065 .............................................................................................1

15 U.S.C. § 1115 (b)(4)....................................................................................10

15 U.S.C. § 1127 ............................................................................................10


## **OTHER AUTHORITIES**

Fed. R. Civ. P. 65(c)........................................................................................25

Defendants Sara Lee Corporation, Sara Lee Bakery Group, Inc., and Earthgrains Baking Companies, Inc. (collectively, "Sara Lee" or "Defendants"), hereby oppose plaintiffs', BBU, Inc., Bimbo Bakeries USA, Inc., Arnold Products, Inc., Arnold Sales Company, Inc., and Arnold Foods Company, Inc., (collectively "Arnold" or "Plaintiffs"), motion for preliminary injunction.

## I.    INTRODUCTION

Arnold has asked this Court to enjoin the September 15, 2009 launch of Sara Lee's EARTHGRAINS 100% NATURAL THINS thin buns product, claiming infringement of its trademark, SANDWICH THINS.  However, Arnold has not made the requisite showing for such extraordinary relief.

As an initial matter, Arnold argues that Sara Lee is planning to use an "identical trademark" for its product.  *See* Arnold's Memorandum in Support of Plaintiffs' Motion for Preliminary Injunction ("Memo") at 1.  This is simply not true.  Sara Lee's product is set to launch under Sara Lee's registered EARTHGRAINS mark, as EARTHGRAINS 100% NATURAL THINS thin buns.  *See* Memo at 1, n.1.  Sara Lee is not using SANDWICH THINS.

It is also particularly disturbing that Arnold has mischaracterized this dispute as a "textbook case of trademark infringement."  Rather, Sara Lee's use of the term "thins" is a permissible, non-trademark, fair use of a descriptive term.  Arnold is impermissibly trying to monopolize the term "thins" to describe a product category needed for others to compete fairly. Although Arnold has a federal registration for the mark, SANDWICH THINS, the registration is not incontestable pursuant to 15 U.S.C. § 1065.  This means that the registration is legally "contestable" on the ground that it is merely descriptive.

The term "thins" describes both the thinness of the Sara Lee product and that the product promotes thinness in consumers.  "Thins" was an obvious choice for its product descriptor as evidenced by the widespread third party use of the term "thins," (*e.g.,* PITA THINS, WHEAT THINS, VEGETABLE THINS), including use and registration of SANDWICH THINS by Arnold.  Nevertheless, Sara Lee considered terms other than "thins."  However, the possible alternatives, including "flats" and "rounds," are not adequate substitutes because they do not convey both product qualities: i.e., that it is not thick, and is a healthy option for weight

1

conscious consumers.  Sara Lee only uses the term "thins" in a non-trademark manner, and only with its well known EARTHGRAINS brand, which is prominently displayed on the product packaging.  Thus, Sara Lee's use of the term is entirely in good faith.

Even under the likelihood of confusion factor test for trademark infringement, the application of such factors demonstrates that Sara Lee's use of the term does not infringe.  SANDWICH THINS is very weak, given the amount of third party registration and use of the term THINS in the food industry.  Moreover, SANDWICH THINS compared to EARTHGRAINS 100% NATURAL THINS is not confusingly similar.

Not only does Arnold fail to show that it has a likelihood of success on the merits, Arnold's only argument for irreparable harm is based on an inapplicable presumption—the presumption of irreparable harm is not available in trademark cases when there is an insufficient showing of likelihood of confusion.  Nor can Arnold legitimately claim that the balance of hardships would justify the injunction.  To the contrary, Sara Lee would suffer irreparable harm if its impending product launch is enjoined.  The Court should therefore deny Arnold's motion.

## II.    STATEMENT OF FACTS

### A.    Sara Lee's EARTHGRAINS Brand

Sara Lee is a global manufacturer and marketer of high-quality, brand-name consumer products including food, beverages, and household products.  Declaration of Juanita Rodriguez ("Rodriguez Decl.") at ¶ 3, Ex. 1.  Sara Lee's leading brands for bakery products include SARA LEE, EARTHGRAINS, IRONKIDS, COLONIAL, and RAINBO.   Declaration of Timothy Zimmer ("Zimmer Decl.") ¶ 6.

The EARTHGRAINS brand originated in 1975 as a super premium line of whole grain bread and bakery products.  *Id.* at ¶ 11.  In 2001, Sara Lee, through its subsidiary, acquired the EARTHGRAINS brand via a merger with the Earthgrains Company.  *Id.* at ¶ 10.  Sara Lee is the owner of the EARTHGRAINS brand and federal trademark registration number 3,576,880 for the mark, EARTHGRAINS.  Rodriguez Decl. at ¶ 4, Ex. 2.  EARTHGRAINS breads contain no artificial colors, flavors or preservatives, have zero grams of trans fats, and are whole grain.  Zimmer Decl. ¶ 12.   There are two core lines of bread products offered under the

2

EARTHGRAINS brand: the "100% NATURAL" line, and the "DOUBLE FIBER" line.  *Id.* at ¶ 22.  Both are prominently featured on the EARTHGRAINS website.  *Id.*  The EARTHGRAINS brand has had sales in excess of $415 million for the last five years.  *Id.* at ¶ 12.  Today, there are seven different EARTHGRAINS 100% NATURAL bread products.  *Id.*

Sara Lee's strategy for the EARTHGRAINS brand has been to continue its venerable history and reputation for high quality, nutritious, 100% natural, whole grain breads.  *Id.* at ¶ 11.  In each of the last three years, Sara Lee has spent about $3-4 million promoting the EARTHGRAINS brand.  *Id.* at ¶ 16.  EARTHGRAINS products are offered across 50% of the country in grocery stores, mass merchandisers, and club warehouses.  *Id.* at ¶ 14.

### 1.      *EARTHGRAINS Packaging*

On packaging for EARTHGRAINS products, the EARTHGRAINS logo appears in large distinctive lettering.  *Id.* at ¶ 17.  The text and graphics for the packaging of the 100% NATURAL line of products (which includes the 100% Natural Thins thin buns) are consistent throughout the line, creating a uniform package trade dress that is easily identifiable by consumers.  *Id.*  Specifically, the package trade dress consists of the distinctive EARTHGRAINS stylized logo underneath which is a rendering of a sheaf of whole grains in front of which sits a pile of milled grain spilling from a scoop.  *Id.*  Beneath that is the phrase, "100% NATURAL," and in the case of the thin bun product, the descriptor THINS.  *Id.*  Below that is the particular identification of the grain which appears in a colored rectangular device.  *Id.*  Each color represents a particular grain.  *Id.*

The EARTHGRAINS mark connotes the healthy aspects of bread made from grains of the earth and thus tends to attract health conscious purchasers.  *Id.* at ¶ 18.  Sara Lee further attracts health conscious consumers by featuring a SLICE OF NUTRITION score card on the packaging for its EARTHGRAINS breads, which is an additional tool for consumers to evaluate the health benefits of the bread.  *Id.* at ¶ 19.

### B.      The Plaintiffs' ARNOLD Brand

Arnold has been in the business of bread since 1940.  Rodriguez Decl. ¶ 7, Ex. 5.  Arnold is a leading provider of bakery products with an extensive portfolio of brands, including

ARNOLD, OROWEAT, BIMBO, BOBOLI, THOMAS', and ENTENMANN'S.  Dkt. No. 7-4, Declaration of Jeffrey M. Glauber ("Glauber Decl.") at ¶ 4; Memo at 2.

Sara Lee's marketing studies show that the ARNOLD brand has a 60% loyalty rate, which is extremely high for the industry.  Zimmer Decl. ¶ 36.  It suggests that purchasers of ARNOLD breads are not likely to stray to other brands and are likely to look for the ARNOLD mark above other factors in making their purchasing decisions.  *Id.*

One line of products offered by ARNOLD is the ARNOLD SELECT buns and rolls products.  Rodriguez Decl. ¶ 8, Ex. 6.  The ARNOLD SELECT products include a variety of roll types, such as dinner rolls, multigrain kaiser rolls, frank rolls, onion sandwich rolls, potato hot dog and sandwich rolls, and white seeded sandwich buns.  *Id.* at ¶ 8, Ex. 7.  The Plaintiffs' SANDWICH THINS are also a part of this SELECT line of products.  *Id.*

### 1.    *ARNOLD SELECT Packaging*

The ARNOLD SELECT products all have very large ARNOLD and SELECT logos that cover approximately half of the front of the product packaging.  *Id.* at ¶ 8.  Arnolds' ARNOLD logo is comprised of a large red "O" over which an image of a head of wheat is imposed.  *Id.* The "O" is also surrounded by one head of wheat on each side, and is placed on top of a large banner bearing the ARNOLD name in red.  *Id.*  The SELECT logo is comprised of the term SELECT in red letters, with a red head of wheat image crossing the bottom of the letter "C," within a beige rectangle.  *Id.*

The ARNOLD SELECT SANDWICH THINS packaging follows suit.  In addition to the ARNOLD SELECT house mark, the packaging also has the SANDWICH THINS mark in white script letters on a red generally rectangular shaped background.  *Id.*

### C.    **Interaction Between ARNOLD and EARTHGRAINS Brands**

Market research shows that there is little interaction[1] between the ARNOLD and EARTHGRAINS brands.  Zimmer Decl. ¶ 37.  This research indicates that when purchasers of EARTHGRAINS breads decide to purchase a different brand, the other brand is not likely to be

---

[1] "Interaction," refers to the degree to which brands share the same customers and the degree to which purchasers of one brand will stray to the other.  Zimmer Decl ¶ 37.

ARNOLD, and vice versa.  *Id.*  There are a number of factors that reduce the interaction between ARNOLD and EARTHGRAINS breads.  *Id.* at ¶ 38.  Purchasers of EARTHGRAINS breads put a premium on nutritional value and natural ingredients.  *Id.*  These are consumers who take more time to find items that fit their health conscious lifestyle and are particularly swayed by the 100% Natural positioning of the EARTHGRAINS product line.  *Id.*

By contrast, the ARNOLD product line is directed to more mainstream consumers, who may be health aware, but do not necessarily place the same degree of importance on the attributes that distinguish the EARTHGRAINS 100% NATURAL products from other breads, including those offered under the ARNOLD mark.  *Id.* at ¶ 39.  ARNOLD breads include a wide range of products appealing to different types of bread consumers, such as Country Classic Premium White breads and Brick Oven family breads.  *Id.* at ¶ 40.  Only one of the varieties of ARNOLD SELECT SANDWICH THINS, namely the 100% Whole Wheat flavor, is 100% whole grain.  *Id.* at ¶ 41.  None of the ARNOLD SELECT SANDWICH THINS are 100% natural, like Sara Lee's product.  *Id.*  The ARNOLD product thus appeals to a broader consumer base that may not be as concerned with purchasing product that is 100% natural.  *Id.*  For consumers of Sara Lee's EARTHGRAINS 100% NATURAL breads, however, the 100% NATURAL characteristic is critical to their purchasing decision.  *Id.*

Additionally, interaction between the brands is low because retailers tend to group breads and related products by brand, or at least by source.  *Id.* at ¶ 42.  Typically, EARTHGRAINS and SARA LEE products will be grouped near each other.  *Id.*  Similarly, ARNOLD and its other brands will be displayed near each other.  *Id.*  Hence, brand loyal customers can easily find their preferred brand or brands offered by the same parent company.  *Id.* at ¶ 42.  Sara Lee's marketing data supports this proposition as purchasers of its EARTH GRAINS breads will turn to SARA LEE HEALTHY & DELICIOUS breads as their alternative product.  *Id.* at ¶ 44.  It is unlikely the EARTHGRAINS 100% NATURAL THINS product will be grouped with the ARNOLD SELECT SANDWICH THINS in stores.  *Id.* at ¶ 43.  Consumers thus are not likely to encounter these products side by side.  *Id.*

Moreover, Sara Lee does not believe that consumers will be confused by supermarkets

offering both the ARNOLD SELECT SANDWICH THINS and the EARTHGRAINS 100% NATURAL THINS.  *Id* at ¶ 45.  Sara Lee sent out numerous sales teams to speak with its retail customers' bread buyers and introduce them to their new thin buns product.  *Id.* at ¶ 46. Although these are the same buyers of the ARNOLD SELECT SANDWICH THINS, not one buyer noted any similarity between the product names, or that consumers might rely on the term "THINS" to believe that the product was associated with ARNOLD breads.  *Id.*

### D.      Arnold's Trademark Registration for SANDWICH THINS

On June 18, 2008, Arnold applied for a federal trademark registration for the mark, SANDWICH THINS, alleging that it was first used on March 31, 2008.  Rodriguez Decl. at ¶ 10, Ex. 8.  On June 16, 2009, the USPTO issued Registration No. 3,637,950 to Arnold.  *Id.*

### E.      Third Party "THINS" Use

Numerous third party food companies use names and marks incorporating the term "thins."  In its papers, Arnold does not mention any of them, or that many of them began using the term before Arnold's claimed first use of its mark SANDWICH THINS of March 2008.

#### 1.      Trademarks Incorporating the Term "Thins"

The following are co-existing federal trademark registrations and applications incorporating the term THINS:

- **WHEAT THINS** for crackers, owned by Kraft Foods Global LLC ("Kraft")
- **VEGETABLE THINS** for crackers, owned by Kraft
- **PITA THINS** for flat bread, owned by Kraft
- **GARDEN CHICKEN THINS** for bread, biscuits, crackers, owned by The Garden Co. Ltd.
- **SWEET THINS** for baked goods, namely cakes and cookies, owned by Sweet Things, Inc.
- **NUT-THINS** for wafers with almonds or other nuts, owned by Blue Diamond Growers
- **WAFER THINS** for wheat based wafer snacks, owned by Honey Wafer Baking Co.
- **BAKED POTATO THINS** for potato crisps, owned by William Poll, Inc.
- **WATERTHINS** crackers, biscuits and bread sticks; owned by Philemon Pty Ltd.
- **GOURMET THINS** for crisp bread, owned by Stabburet A/S

- **THINNY THIN THINS** for crackers, owned by Silver Palate Kitchens, Inc. (Allowed intent-to-use application, mark is in use)
- **CRISPITHINS** (Stylized) for cookies, crackers, snack foods, owned by Miller Chapman LLC, Dba Polka Dot Bake Shop.  (Pending, filed July 2, 2009, mark is in use)

Rodriguez Decl. at ¶¶ 11-22, Exs. 9-20.

### 2.   *Additional Common Law Uses of the Term "THINS"*

The following are other common law uses of names and marks incorporating THINS:

- **Rold Gold Thins** for pretzels, by Frito Lay
- **Pretzel Thins** for flat pretzels, by Pepperidge Farms
- **Pretzel Thins** for pretzels, by Herr's
- **Pretzel Thins** for pretzels by Bachman
- **Stoned Wheat Thins** for crackers, by Red Oval Farms
- **Savory Thins** for crackers, by Sesmark
- **Rice Thins** for crackers, by Back to Nature
- **Onion Thins, Craway Thins, Sesame Thins, Black Pepper Thins, Parmesean Thins**, and **Olive Rosemary Thins** for crackers, by Eli Zabar
- **Potato Thins** for rice cakes, by Paskaez
- **Corn Thins** and **Rice Thins** for crispbreads/cakes, by Real Foods Pty Ltd.
- **SnackWell's Potato Thins** for potato chips, by Nabisco
- **Cantina Thins** for tortilla chips, by On the Border
- **Anna's Ginger Thins** and **Blueberry Thins** for cookies, by AB Annas Pepparkakor
- **Cookie Thins** for cookies, by Karen's
- **Almond Thins**, **Chocolate Thins**, and **Ginger Thins** for cookies, by Jules Destrooper
- **Shortbread Lemon Thins** for cookies, by Walkers
- **Chocolate Thins** for chocolates, by Fran's Chocolates, Ltd.
- **Roca Buttercrunch Thins** for chocolates, by Brown & Haley
- **Andes Creme De Menthe Thins** for Chocolates, by Tootsie Roll Industries, LLC

Rodriguez Decl. at ¶¶ 23-41, Exs. 21-39.

7

**F.      Sara Lee's Adoption of the Term THINS**

As part of the natural expansion of the EARTHGRAINS brand, Sara Lee has planned to introduce other forms[2] of fresh baked products.  Zimmer Decl. ¶ 24.  For the EARTHGRAINS product line, Sara Lee decided to expand into a thin bun product because Sara Lee believed that this form would be appealing to its health conscious consumer base.  *Id.*

The term "THINS" was chosen as the product descriptor for the thin bun product because it describes both the thinness of the product itself (i.e. that it is not as thick as standard buns), and that the product promotes thinness in its health conscious consumers.  *Id.* at ¶ 25.  Sara Lee knew about widespread third party use of the term "thins," including use and registration of SANDWICH THINS by Arnold.  *Id.*  Other terms were considered, such as, "flats," and "rounds," but they were inadequate substitutes because they do not convey both that the product is not thick and that it is healthy.  *Id.*  Additionally, these terms have other connotations that consumers would find confusing.  *Id.*  For example, the term, "flats," tends to be used with tortillas and wraps and would cause confusion about the form and nature of the product.  *Id.* Sara Lee thus considers the term THINS essential to quickly, clearly, and directly describe a thin bun for health conscious consumers.  *Id.* at ¶ 26.

EARTHGRAINS 100% NATURAL THINS will be launched on September 15, 2009 across six western states in a target of 3200 stores.  *Id.* at ¶ 27.  Sara Lee has made substantial investments in time, money, and effort in connection with the September 15, 2009 launch.  *Id.* at ¶ 28.  Sara Lee has been developing the product and planning the launch since June 2009.  *Id.* Sara Lee has allocated $1 million for the national launch of the product, which represents a significant portion of the $7 million annual budget for the EARTHGRAINS brand.  *Id.* at 29. Specific to the September 15th launch in the west region, Sara Lee has already allocated and spent $275,000 on media and promotional materials.  *Id.*  Additionally, Sara Lee has already spent $550,000 on product development, ingredients, and packaging for the launch, which translates to eleven weeks of finished product, comprising 67,000 units of product per week.  *Id.*

---

[2] "Form" of a baked product refers to the category and shape of the bread product, for example, bread, roll, bagel, buns, etc.  Zimmer Decl. ¶ 24.

at 30.   Sara Lee has also invested hundreds of hours in the development of the product, the packaging, and the advertising and promotional materials.  *Id.*  The bread for the first week of the launch will be baked and packaged on September 10 and 11, and will be delivered to distribution centers on September 13 and 14 for sale on September 15.  *Id.*  Sara Lee anticipates sales of $158,000 per week, and total estimated sales of the initial 11 week launch period to be approximately $1.7 million.  *Id.* at 31.

### G.   Arnold's Mischaracterization of Sara Lee's Product Name

On August 17, 2009, Sara Lee received a cease and desist letter from Arnold enclosing a courtesy copy of the Complaint that referenced and attached portions of a marketing presentation provided by Sara Lee to certain grocery store chains.   Declaration of Robert S. Weisbein ("Weisbein Decl.") at ¶ 2; Dkt. 1, Complaint.   The marketing presentation contained information regarding Sara Lee's upcoming product launch of its EARTHGRAINS 100% NATURAL THINS product, including images of the product and the product packaging.   Complaint, Ex. B-C.   On one slide, several pages into the presentation, the term "sandwich thins" was used in a descriptive manner.   *Id.*   SANDWICH THINS did not appear on any of the product images.   *Id.*

Sara Lee responded to this letter by telephone on August 20, 2009, and in writing on August 21, 2009, informing Arnold that it was not using the term or the mark SANDWICH THINS for its product, but rather was only using THINS in a descriptive manner.   Weisbein Decl. at ¶ 2.   Nonetheless, except for a brief mention in a footnote, Arnold continues to assert throughout its preliminary injunction papers that Sara Lee is intending to use SANDWICH THINS, and that Sara Lee is intending to use an "identical mark."   Memo at 1.

## III.   LEGAL ARGUMENT

To obtain a preliminary injunction, Arnold must show that: (a) it is likely to succeed on the merits; (b) likely to suffer irreparable harm in the absence of preliminary relief; (c) the balance of equities tips in its favor; and (d) that an injunction is in the public interest.  *Winter v. Nat. Res. Def. Council, Inc.* 129 S. Ct. 365, 374, (2008).   "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion."  *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

9

### A.   Plaintiffs Cannot Succeed on the Merits in this Action

#### 1.   Sara Lee's Use of the Term "Thins" is a Permissible Fair Use

Sara Lee is not using the term "thins" as a trademark.  Rather, Sara Lee's descriptive use of the term is a fair use that falls outside the bounds of trademark law.  The affirmative defense of classic fair use applies where the defendant is: (1) not using the term as a trademark; (2) uses the term only to describe its good or services; and (3) uses the term fairly and in good faith.  *Bell v. Harley Davidson Motor Co*., 539 F. Supp. 2d 1249, 1257 (S.D. Cal. 2008); *see also* 15 U.S.C. § 1115(b)(4).   Additionally, in demonstrating the fair use defense, "the defendant has no independent burden to negate the likelihood of any confusion."  *Bell,* 539 F. Supp. 2d at 1257 (citing *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc*., 543 U.S. 111, 125 (2004) (quotation marks omitted)).   Rather, "some possibility of consumer confusion must be compatible with fair use," and the defense recognizes "the undesirability of allowing anyone to obtain a complete monopoly on use of a descriptive term simply by grabbing at it first."  *KP Permanent Make-Up*, 543 U.S. at 121-22.

Arnold is inappropriately attempting to use trademark law to grab a descriptive term for its own exclusive use.

#### a.   Sara Lee Does Not Use the Term "Thins" as a Trademark

A "trademark" is any word, name, symbol, or device that is used to identify and distinguish goods from those manufactured or sold by others, and to indicate the source or origin of those goods.  15 U.S.C. § 1127.  If a mark is not used to identify the source of goods, the term is not being used as a trademark.  *See Bell,* 539 F. Supp. 2d at 1258; *see also B&L Sales Assoc. v. H. Daroff & Sons, Inc*., 421 F.2d 352, 353 (2d Cir. 1969) (holding that it was "inconceivable that [defendant's advertising] materials were intended to attribute the source of the goods to anyone other than the defendants"); *Citrus Group, Inc., v. Cadbury Beverages, Inc*., 781 F .Supp. 386, 391-92 (D. Md. 1991) (explaining that "[t]he fact that 'main squeeze' is used by Defendants as a symbol to attract public attention does not mean it is being used as a trademark").

In evaluating whether a particular use of a term is as a trademark, courts sometimes consider factors such as lettering, type-style, size, visual placement, prominence of the

challenged words, and the use of housemarks or other trademarks.  *See Bell,* 539 F. Supp. 2d at 1258; *Packman v. Chicago Tribune Co*., 267 F.3d 628, 639 (7th Cir. 2001) ("[T]he Tribune's distinctive masthead, which appears prominently on the front page and on each piece of memorabilia containing the phrase, identifies the source of the products"); *Corbitt Mfg. Co., Inc. v. GSO Am., Inc*., 197 F. Supp. 2d 1368, 1377 (S.D. Ga. 2002) (explaining that "[w]hile NON-FLOATING is located at the center of GSO's packaging, other prominent terms appear on the bag" including GSO's registered trademarks); *Eli Lilly and Co. v. Revlon, Inc*., 577 F.Supp. 477, 486 (S.D.N.Y. 1983) ("Emphasis of a descriptive term on packaging does not show that the term is being used as a trademark.").

Sara Lee is not using the term "thins" to identify the source of the product.  Rather, the source is indicated by Sara Lee's well-known EARTHGRAINS mark, and an image of a sheaf of whole grains, which appears prominently at the top of the packaging.  Zimmer Decl. ¶ 17; *see Corbitt*, 197 F. Supp. 2d at 1377 (In addition to the challenged terms, "GOLDEN TROPHY" and "GSO AMERICA," GSO's federally registered trademarks" appeared on the packaging, "accompanied at the top of the bag by an image of a golden trophy.").  Further, the ® registration symbol is used with the EARTHGRAINS mark, but neither ® or TM is used with THINS.  *Id.*

To the extent the term "thins" is emphasized in any way on Sara Lee's packaging, it is to describe the product, namely "thin" buns, and to appeal to the health conscious or weight-loss mindset of the target consumers.  This does not constitute use as a trademark.  *See Schmid Labs. v. Youngs Drug Prods. Corp*., 482 F. Supp. 14, 20-21 (D.N.J. 1979) ("Virtually every aspect of a product's trade dress is intended to catch the eye of the purchaser.").  Even if a challenged term is the largest item on the product packaging, it does not necessarily mean that it is a trademark use.  *Id.* at 21; *Eli Lilly*, 577 F. Supp. at 486 (Revlon trademarks were the source indicators and were in smaller print than the disputed term "lip repair cream.").

    b.    The Term "Thins" Describes Sara Lee's Thin Buns

Sara Lee uses the term "thins" to describe an attribute of its product, namely the thickness of the buns.  *See In re Dual-Deck Video Cassette Recorder*, 11 F.3d 1460 (9th Cir. 1993).

Courts have also applied the fair use doctrine to use of the trademarked phrase to describe

11

a feeling associated with the product or mental attitude or inclination relating to the product. *Bell*, 539 F. Supp. 2d at 1258 (descriptive use of "ride hard" for "consumer's intended reaction of vigor and energy to Harley-Davidson products and merchandise"); *Cosmetically Sealed Indus., Inc. v. Chesebrough-Pond's USA Co.*, 1254 F.3d 28, 30 (2d Cir. 1997) (use of the phrase "Sealed with a Kiss" described "an action that sellers hope consumers will take, using their product"); *Citrus Group*, 781 F. Supp. at 391 (phrase "main squeeze" intended to "engender a sense of romance, incite enthusiasm, and create an association between the consumer and the product"). Here, the term "thins" also describes the mind-set of the target consumers of wanting to be or to remain thin.

Moreover, fair use applies to "all relevant trademark categories," regardless of where the mark falls on the spectrum of distinctiveness. *Bell*, 539 F. Supp. 2d at 1260, n.15. Thus, even if this Court were to find that the mark THINS is suggestive rather than descriptive, which it is not, Sara Lee can still use the term as a product descriptor and prevail on a fair use defense.

### c.   Sara Lee's Use is Fair and In Good Faith

Sara Lee's use of the term "thins," in connection with its thin buns is also in good faith. The standard for good faith for fair use is "whether the alleged infringer intended to trade on the good will of the trademark owner by creating confusion as to the source of the goods or services." *Id.* at 1258 (citing *Int'l. Stamp Art, Inc. v. United States Postal Serv.*, 456 F.3d 1270, 1274-75 (11th Cir. 2006)). In *Bell*, this Court held that Harley-Davidson demonstrated its good faith by including the Harley-Davidson name or logo on every advertisement and good bearing the "ride hard" phrase. *Id.* at 1259.

Likewise, Sara Lee has demonstrated its good faith intent not to trade on the goodwill of the Plaintiffs by always using the EARTHGRAINS mark and trade dress to indicate the source of the product. Sara Lee does not use any element from the Plaintiffs' trade dress; the only element that the two products have in common is the descriptive term "thins."

The only evidence of bad faith Arnold offers is Sara Lee's knowledge of Arnold's product and constructive notice based on the trademark registration. Memo at 11-13. However, a party's use of a mark after receiving notice of the existence of a similar mark is not evidence of

intent to infringe.  *Parenting Unlimited, Inc. v. Columbia Pictures Television*, 743 F. Supp. 221, 230-31 (S.D.N.Y. 1990).  Indeed, "[i]nfringement is not willful if the defendant might have reasonably thought that its proposed usage was not barred[.]"  *Matrix Motor Co., Inc. v. Toyota Jidosha Kabushiki Kaisha*, 290 F. Supp. 2d, 1083, 1095 (C.D. Cal. 2003) (citation omitted).

Furthermore, "[k]nowledge of another's product and an intent to compete with that product is not, however, equivalent to an intent by a new entrant to a market to mislead and to cause consumer confusion."  *General Mills, Inc. v. Kellogg Co.*, 824 F.2d 622, 627 (8th Cir. 1987) (district court did not err in finding lack of bad faith where General Mills conducted extensive research before introducing OATMEAL RAISIN CRISP product).  Thus, research regarding the success of Arnold's product does not indicate that Sara Lee was acting in bad faith.

**B.    Arnold Cannot Show A Likelihood of Confusion**

In addition to Sara Lee's use of "thins" being a permissible fair use, it is also a use that is not likely to cause confusion.  Arnold fails to establish that Sara Lee is using any mark that is confusingly similar to Arnold's.  *See Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1046 (9th Cir. 1999); *Rodeo Coll. Ltd. v. W. Seventh*, 812 F.2d 1215, 1217 (9th Cir. 1987) ("Likelihood of confusion requires that confusion be probable, not simply a possibility.").

In assessing this likelihood of confusion, the Ninth Circuit looks to the eight *Sleekcraft* factors to guide the analysis.  These factors are:  (1) strength of the plaintiff's mark; (2) similarity of the marks; (3) proximity of the goods; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979); *see also Playmakers LLC v. ESPN, Inc.*, 376 F.3d 894, 897-98 (9th Cir. 2004); *Nutrishare, Inc. v. BioRx, LLC*, No. 08 CV 1493 JM (BLM), 2008 WL 4748109, at *2 (S.D. Cal. Oct. 23, 2008) (denying a motion for a preliminary injunction upon finding no strong or probable likelihood of confusion).  When these factors are properly weighed, the evidence dictates that there can be no likelihood of confusion between Arnold's SANDWICH THINS mark and Sara Lee's descriptive use of the term "thins."

13

### 1.   *Arnold's Mark Does Not Deserve Strong Protection*

The strength of a mark rests on its distinctiveness.  *See Sleekcraft*, 599 F.2d at 349.  Trademarks are classified by distinctiveness in one of the following four groups, listed in ascending order of strength of the mark:  (a) generic; (b) descriptive; (c) suggestive; and (d) arbitrary or fanciful.  *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992).   The weaker the mark, the less protection that is afforded.  *See Sleekcraft*, 599 F.2d at 349.

On the spectrum of distinctiveness, a generic mark has no protection.  *See KP Permanent Make-up, Inc. v. Lasting Impression, Inc.*, 408 F.3d 596, 603 (9th Cir. 2005).   Between descriptive and suggestive marks--the "weak" marks, courts bestow less protection on a descriptive mark than a suggestive one, as the former merely describes a characteristic or ingredient of an article while the latter subtly connotes, rather than describes, an ingredient, quality, or characteristic.  *See Nutri/Sys., Inc. v. Con-Stan Indus., Inc.*, 809 F.2d 601, 605 (9th Cir. 1987).   A descriptive mark is protectable only upon a showing of secondary meaning.  *Filipino Yellow Pages, Inc. v. Asian J. Publ'ns, Inc.*, 198 F.3d 1143, 1147 (9th Cir. 1999).  Arbitrary and fanciful marks are considered "strong" and entitled to maximum protection.  *See, e.g.*, *Ocean Garden, Inc. v. Marktrade Co.*, 953 F.2d 500, 506 (9th Cir. 1991).

Notwithstanding any presumption of distinctiveness associated with having a federal registration,[3] the SANDWICH THINS mark is at best descriptive, and therefore deserving of no protection without a showing of secondary meaning.  Without any imagination, it merely describes the specific size, type, thickness and potential use of a bread bun.  Moreover, in relying solely on its federal registration without any independent showing of secondary meaning, Arnold fails to address that conceptual strength (i.e., the mark's placement on the strength continuum) is only one of two prongs to be considered in the strength analysis.  That analysis also includes looking at the marketplace recognition of the mark.  *See Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1058 ("placement within the conceptual distinctiveness spectrum is not the only determinant of a mark's strength"); *GoTo.com, Inc. v.*

---

[3] Defendants intend to file affirmative defenses and/or counterclaims in response to Plaintiffs' Complaint challenging the validity of Arnold's registration for SANDWICH THINS.

14

1    *Walt Disney Co.,* 202 F.3d 1199 (9th Cir. 2000) ("This 'strength' of the trademark is evaluated in

2    terms of its conceptual strength and commercial strength.").

3        Additionally, despite its registration, Arnold uses SANDWICH THINS descriptively to

4    refer to the product category by using the term as a noun, and not including a generic product

5    name on the product's packaging.  Zimmer Decl. ¶ 41, Ex. 6.  Specifically, the packaging refers

6    to "8 pre-sliced sandwich thins."  *Id.*

7        Ultimately, Arnold is attempting to use trademark law to grab a descriptive term for its

8    own exclusive use.  *See KP Permanent Make-Up*, 543 U.S. at 122, (explaining that the fair use

9    defense recognizes "the undesirability of allowing anyone to obtain a complete monopoly on use

10   of a descriptive term simply by grabbing at it first").

11       Arnold implies that its advertising and promotional campaign for SANDWICH THINS

12   transforms it into a strong mark.  This is false and misleading and has been similarly rejected.

13   As the Ninth Circuit in *Nutri/System* noted, ten years of use and "extensive advertising" did not

14   transform a weak, suggestive mark into a "strong or arbitrary one."  809 F.2d at 605.  *See also*,

15   *Sleekcraft*, 599 F.2d at 350.  Here, as Arnold has a much weaker mark than that in *Nutri/System*

16   and has only been in the market for a short period of time, its argument is even less persuasive,

17   and its mark therefore commands the narrowest scope of protection.

18       Further, Arnold attempts to bolster the strength of the mark by contending that no

19   competing products utilize a mark similar to SANDWICH THINS.  At this time, however, there

20   are at best only a few other competitors in the thin bun category.  Memo at 10.  The fact that

21   Pepperidge Farms elected not to use the THINS descriptor for the product type is not evidence

22   that consumers have come to recognize SANDWICH THINS as indicating Arnold as the source.

23   Indeed, Arnold has put forth no evidence to support this claim and the claim itself completely

24   ignores the widespread co-existence of third party THINS marks in the food field including

25   bakery products.  This extensive third party use demonstrates that THINS is common and not

26   unique to Arnold, and seriously undermines any claim that Arnold's mark is anything but weak.

27   *See Alpha Indus., Inc. v. Alpha Steel Tube & Shapes, Inc.*, 616 F.2d 440, 445 (9th Cir. 1980)

28   (finding ALPHA weak for steel tubing products because ALPHA was a very common term, and

---

15

was used in numerous trademarks and trade names).

Indeed, the prevalent third party use of the term THINS for food products demonstrates that consumers have become adept at distinguishing among products using the designation. Consequently, Sara Lee's use of EARTHGRAINS 100% NATURAL THINS is no more likely to cause confusion with ARNOLD SELECT SANDWICH THINS than any other third party food product.  If multiple products bearing the THINS designation can co-exist for crackers, cookies, and chocolates, to name a few, there is no reason that ARNOLD SELECT SANDWICH THINS and EARTHGRAINS 100% NATURAL THINS cannot co-exist for thin buns.

Because SANDWICH THINS is a weak, descriptive mark, entitled to little, if any, protection, a stronger showing of the other *Sleekcraft* factors is necessary to find a likelihood of confusion.  *See Sleekcraft*, 599 F.2d at 350.  Arnold cannot make such showing.

### 2.    The Marks Are Not Similar

Contrary to Arnold's contention, the Court should not dissect the marks and simply focus on THINS when considering whether the marks are similar.  Rather, the Court must consider the trademarks as a whole as they appear in the marketplace, not examine them in pieces.  *See Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1392 (9th Cir. 1993); *see also Alpha Indus.*, 616 F.2d at 444 (holding that the common "alpha" prefix alone was insufficient to prove similarity).  In this analysis, the Court should assess the similarity of the marks in terms of their sight, including the font, typesetting, and color, sound, and meaning.  *See Playmakers,* 376 F.3d at 897 n.1; *Fruit of the Loom, Inc. v. Girouard*, 994 F.2d 1359, 1363-64 (9th Cir. 1993).

Arnold's mark, as used on its packaging and in its promotional literature, including its website, is ARNOLD SELECT SANDWICH THINS.  Sara Lee's is using EARTHGRAINS 100% NATURAL THINS, with the 100% NATURAL referring to the particular product line and THINS describing the bread product as a thin bun.  Zimmer Decl. ¶ 17.  Sara Lee is not using SANDWICH THINS as its product designator, a fact that has been communicated to Arnold on more than one occasion, but rather as a product descriptor.  *See supra* at 9.

Although the parties have the term THINS in common, consumers will not observe this

16

1   commonality in a vacuum.[4]   Instead, when faced with both products, purchasers will see the

2   packaging in their entireties which displays these marks in connection with Arnold's and Sara

3   Lee's housemarks – ARNOLD and/or ARNOLD SELECT and EARTHGRAINS, respectively.

 

9         In addition, as illustrated by the above side-by-side comparison, the characteristics

10  depicted in connection with the ARNOLD SELECT and EARTHGRAINS housemark logos are

11  completely different, as are the products' package trade dress.

12        There can be no question that when these products are viewed in their entireties, in the

13  marketplace, they are extraordinarily different.   The two product names appear differently in

14  terms of the font, typesetting, and color.   When spoken aloud, they sound different, and have

15  different meanings.   Thus, as SANDWICH THINS and THINS are merely subsidiary to the

16  parties' distinctive housemarks, consumers will encounter the trademarks differently in the

17  marketplace.   *See Cohn v. PetSmart, Inc.*, 281 F.3d 837, 842 (9th Cir. 2002).   As a result, the

18  emphasis on these housemarks reduces or eliminates any likelihood of confusion.   *Id.*

19        However, in spite of these differences, Arnold still tries to argue that Sara Lee's THINS

20  is "highly similar" to Arnold's SANDWICH THINS, because Sara Lee incorporates the

21  dominant element of Arnold's trademark.   Memo. at 7.   This argument is baseless.   In addition to

22  submitting no evidence to support its characterization that THINS is a "dominant element," by

23  placing undue emphasis on THINS, Arnold ignores the extensive use of THINS throughout the

24  food industry.   *See* Rodriguez Decl. ¶¶ 11-41, Exs. 9-39.   Indeed, there is a crowded field of

25  THINS marks.   As a result, consumers are able to distinguish marks such as WHEAT THINS

27        [4] Even if the Court were to consider SANDWICH THINS and THINS in a vacuum,
28  which is inappropriate, the marks differ significantly.   SANDWICH THINS is two adjacent
    terms, both of which are white, stylized, similarly sized, and in front of a red banner.   THINS,
    however, is one term that is brown in color with the letters in all caps in front of white banner.

17

and SWEET THINS, not by the THINS element, but rather by the WHEAT and SWEET lead-in elements, as well as other elements of the packaging trade dress.  Accordingly, when properly viewed in this context, consumers will not confuse EARTHGRAINS 100% NATURAL THINS and SANDWICH THINS.  Rather, they will be able to distinguish between them as they do with other THINS products.  This lack of similarity factor favors  Sara Lee.

### 3.    Proximity of the Goods

On this factor, Arnold fails to point out that the Court should consider whether the products are sold to the same class of purchasers.  *Sleekcraft*, 599 F.2d at 305.  This is likely because Arnold and Sara Lee cater to different types of customers, which favors a finding of no likelihood of confusion.  *Perfumania, Inc. v. Perfumay, Inc.*, 23 F.3d 248 (9th Cir. 1994).

The EARTHGRAINS 100% NATURAL product line is directed to consumers who put a premium on nutritional value and natural ingredients, and therefore take more time to find items that are compatible with their health conscious lifestyle.  Zimmer Decl. ¶ 38.  By contrast, purchasers of the ARNOLD product line are more mainstream consumers, who may be health aware but do not necessarily place the same degree of importance on the attributes that distinguish the EARTHGRAINS 100% NATURAL products from other breads.  *Id.* at ¶ 39.  *See Sleekcraft* 599 F.2d at 348 (affirming district court finding that "although there was some overlap in potential customers for the two product lines, the boats 'appeal to separate submarkets' . . . thus, competition between the lines is negligible").

Further, customers are brand-loyal.  When purchasers of EARTHGRAINS breads decide to buy another brand, the other brand is not likely to be ARNOLD.  *Id.* at ¶ 36.  Arnold incorrectly argues that because the goods are both bakery products, this alone is sufficient to show that the products are competitive and therefore related.  Simply because two products fall within the same general field does not mean they are sufficiently related to create a likelihood of confusion.  *See Playmakers*, *LLC v. ESPN, Inc.*, 297 F. Supp. 2d 1277, 1282 (W.D. Wash. 2003), *aff'd*, 376 F.3d 894 (9th Cir. 2004); *see also Matrix Motor Co.*, 290 F. Supp. 2d at 1092.

There are also significant differences between the parties' products.  In addition to targeting different purchasers, the EARTHGRAINS 100% NATURAL THINS are made with

18

100% natural ingredients, are made with whole grain, have 0 grams of trans fat, and have no artificial colors, flavors, or preservatives, all factors that are critical to the EARTHGRAINS consumer base.  Zimmer Decl. ¶ 12.  Arnold, however, only offers one variety of its product that is 100% whole grain and none that is 100% natural.  *Id.* at ¶ 41.  Because each brand targets different consumers with different products, no confusion is likely.  This factor favors Sara Lee.

### 4.      There Is No Evidence of Confusion

As Sara Lee has not yet launched EARTHGRAINS 100% NATURAL THINS, it agrees with Arnold that there is no actual confusion with the SANDWICH THINS mark, and this factor is neutral.   Memo. at 13. However, Sara Lee objects to Arnold's claim that confusion is "inevitable" once the product is launched.  While Arnold has adduced no evidence on this point, Sara Lee has gathered information to the contrary.  None of the retail bread product buyers with whom Sara Lee met to present its EARTHGRAINS 100% NATURAL PRODUCT noted any similarity between the product names or that consumers might rely on the term THINS to believe that Sara Lee's product was associated with Arnold, despite the fact that such buyers purchase both brands.   Zimmer Decl. at ¶ 46.

Moreover, Arnold's failure to submit a confusion survey allows the Court to infer that the results of such a survey would be unfavorable for its position.[5]  *Instant Media, Inc. v. Microsoft Corp.*, No. C07-02639, 2007 WL 2318948, *15 (N.D. Cal. Aug. 13, 2007); *Playboy Enterprises, Inc., v. Netscape Communications Corp.*, 55 F. Supp. 2d 1070, 1084 (C.D. Cal. 1999) *Cairns v. Franklin Mint Co.*, 24 F. Supp. 2d 1013, 1041-42 (C.D. Cal. 1998).

### 5.      The Marketing Channels Are Different

Arnold oversimplifies the marketing channels used for fresh bread.  Arnold and Sara Lee both promote and distribute their bread products to retail stores and outlets.[6]  However, the fresh

---

[5] Arnold cannot be heard to complain that it did not have time to conduct a survey. Indeed, Arnold had Sara Lee's marketing materials, which contained an image of Sara Lee's product, and could have been used as a stimulus in a survey.

[6] Arnold posits, without evidence, that the parties' products are placed side-by-side on grocery store shelves.  Memo. at 10.  This is false.  *See* Zimmer Decl. ¶¶ 42-43.  That products have different locations within a store can be properly considered in determining the similarity of the products' consumers.  *See Sunenblick v. Harrell*, 895 F. Supp. 616, 629 (S.D.N.Y. 1995).

19

1   bread category of goods has evolved into more than just loaves of bread.  There are a wide

2   variety of forms, and consumers must navigate to find the particular product they are interested

3   in purchasing.  Zimmer Decl. at ¶ 42.

4        Sara Lee's EARTHGRAINS 100% NATURAL breads appeal to a different type of

5   consumer, one that is health conscious and committed to nutrition.  *Id.* at ¶¶ 38-39.  These

6   consumers put a premium on nutritional value as well as on natural ingredients and will spend

7   more time in making a decision on which product to buy.  *Id.* at ¶ 38.  To further attract these

8   consumers, the EARTHGRAINS packaging provides a SLICE OF NUTRITION score card,

9   which serves as an additional key to evaluate its health benefits.  *Id.* at ¶ 19.  Sara Lee also

10  demonstrates a commitment to the lifestyle of its purchasers and to the earth from which its grain

11  products are made by way of its sponsorship of The Nature Conservancy.  *Id.* at ¶ 20.

12       Arnold, in contrast, because it caters to a different customer base, attempts none of these

13  marketing efforts, as its purchasers do not place the same degree of importance on the healthy

14  attributes that EARTHGRAINS breads provide.  *See id.* at ¶ 39.  Given the difference in

15  customers, the marketing channels do not converge, and there can be little likelihood of

16  confusion.  *See Nutri/Sys.*, 809 F.2d at 606 (concluding that when there is a difference in

17  customers, the channels of trade did not converge and there is little likelihood of confusion).

### 6.    *Consumers Are Likely to Use a High Degree of Care*

19       To determine the degree of care, product price alone is not determinative; courts must

20  look at the specific product in question.  *See Herbalife Int'l, Inc. v. Lumene N. Am. LLC*, No. CV

21  07-5040 AHM (RCx), 2007 WL 4225776, at *10 (C.D. Cal. Oct. 15, 2007).  In *Herbalife*, the

22  court found that the plaintiff failed to demonstrate that ordinary purchasers of skin care products

23  were unlikely to exercise a high degree of care.  *Id.* at *12.  Herbalife targeted its products to

24  health conscious consumers, and skin care products tended to have a loyalty factor, which would

25  suggest that customers would take more care in initially selecting a product because they tend to

26  purchase the same product again and again.  *Id.*

27       Similar to consumers of the skin products at issue in *Herbalife*, the purchasers of the

28  EARTHGRAINS brand also put a premium on health attributes and are loyal to their brand.

20

1    These consumers take more time and are careful to find items for their health conscious lifestyle.

2    Zimmer Decl. ¶¶ 38-39.  They are conscious about what they eat and read labels and nutritional

3    contents closely to ensure that they are purchasing a bread that is made with only 100% natural

4    ingredients.  *Id.*  The Court here should likewise conclude that purchasers of EARTHGRAINS

5    100% NATURAL THINS would be sophisticated consumers likely to exercise a high degree of

6    care, a factor favoring Sara Lee.

7                    ***7.      Sara Lee Had No Intent to Infringe***

8            For this factor, Arnold confuses Sara Lee's intent to compete with an intent to infringe.

9    These are not the same.  *See General Mills,* 824 F.2d at 627 ("Knowledge of another's product

10   and an intent to compete with that product is not, however, equivalent to an intent by a new

11   entrant to a market to mislead and to cause consumer confusion."); *see also Nora Beverages, Inc.*

12   *v. Perrier Group of Am., Inc.*, 269 F.3d 114, 124 (2d Cir. 2001); *W.W.W.Pharmaceutical Co.,*

13   *Inc. v. Gillette Co*., 984 F.2d 567 (2d Cir. 1993).  Arnold tries to make much of Sara Lee's

14   internal references to the success of SANDWICH THINS.  Memo. at 12.  However, these

15   references never suggest that Sara Lee believed that the SANDWICH THINS mark made

16   Arnold's product successful.  Rather, the marketing materials—intended only for meetings with

17   retailers, and not ultimate customers—merely refer to SANDWICH THINS as a way to describe

18   a thin bun and indicate that the ARNOLD product has "established awareness … for this product

19   type."  (Glauber Decl. Exs. 3-4.)

20           As explained above (*supra* at 8-9), it is inappropriate to infer that Sara Lee had intent to

21   infringe based on its knowledge of Arnold's product.  *See Parenting Unlimited,* 743 F. Supp. at,

22   230-31; *Matrix*, 290 F. Supp. 2d, at 1095 ("Infringement is not willful if the defendant might

23   have reasonably thought that its proposed usage was not barred[.]") (internal quotation marks

24   omitted).  Rather, Sara Lee has demonstrated good faith by always using the EARTHGRAINS

25   house mark and by using THINS in a fair descriptive manner in combination with 100%

26   NATURAL.  *See Bell,* 539 F. Supp. 2d at 1259.  Because Arnold has provided no actual

27   evidence to rebut Sara Lee's express denial of any intent to infringe, this factor is neutral.  *See*

28   *Eacceleration Corp. v. Trend Micro, Inc.*, 408 F. Supp. 2d 1110, 117-18 (W.D. Wash. 2006).

8.     **There Is No Plan to Expand the Product Line**

In order for this factor to support a finding of likelihood of confusion, there must be a "strong possibility of expansion into competing markets."  *See M2 Software, Inc. v. Madacy Entm't*, 421 F.3d 1073, 1085 (9th Cir. 2005); *Sleekcraft*, 599 F.2d at 354.  Rather than try to make this showing, because it cannot, Arnold contends that the parties' goods are directly competitive.  Memo at 13.  As discussed above, there is no support for this premise as Sara Lee's EARTHGRAINS 100% NATURAL THINS and the ARNOLD SELECT SANDWICH THINS cater to a different consumer entirely.  *See supra* at 4-6; *see also Sleekcraft* 599 F.2d at 348, 350.

Sara Lee's EARTHGRAINS brand, and the 100% NATURAL product line in particular, resonate with health conscious purchasers seeking bread products made with 100% natural ingredients and whole grains without any artificial colors, flavors, or preservatives.  Zimmer Decl. at ¶¶ 22-23.  Thus, there is little, if any likelihood, that Sara Lee will expand this brand into a product line like Arnold's which is not 100% NATURAL.  This factor therefore weighs against a likelihood of confusion.

Upon properly weighing the *Sleekcraft* facts, the balance of these factors is in Sara Lee's favor.  Arnold has not demonstrated a likelihood of confusion.

**C.     PLAINTIFFS HAVE NOT DEMONSTRATED IRREPARABLE HARM**

The Plaintiffs rely solely on an inapplicable presumption for their argument regarding irreparable harm.  Plaintiffs argue that once a plaintiff establishes a likelihood of confusion, irreparable harm can be presumed.  Memo at 14.  However, this presumption only applies when a plaintiff can demonstrate a likelihood of confusion.  *Rodeo Collection,* 812 F.2d 1215.  Where a plaintiff fails to make a satisfactory showing on likelihood of confusion, an independent showing of irreparable harm is required.  *Id.* at 1220; *Sardi's Rest. Corp. v. Sardie*, 755 F.2d 719, 725 (9th Cir. 1985) (explaining that "the burden was on appellant to demonstrate a realistic possibility of irreparable harm, and since the possibility of harm was so slight, the trial court did not abuse its discretion in refusing to issue a preliminary injunction"); *see also Bayline Partners, L.P. v. Weyerhaeuser Co*., 31 U.S.P.Q.2d 1051, 1054 (N.D. Cal. 2004).

Plaintiffs cannot demonstrate a likelihood of confusion.  Sara Lee's use of the term

22

"thins" is a permissible fair use, and the application of the *Sleekcraft* factors weighs in favor of Sara Lee.  Thus, Arnold is not entitled to any presumption of irreparable injury.  Furthermore, Plaintiffs do not show how they will suffer from the introduction of Sara Lee's product.  In order to demonstrate irreparable harm, Arnold must provide more than mere speculation.  *Guichard v. Universal City Studios, LLLP*, No. C 06-6392 JSW, 2007 WL 1750216, at *8 (N.D. Cal. June 15, 2007) (citing *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988).  Plaintiffs only provide conclusory and unsupported assertions that they will suffer brand diminishment and lost sales.  Plaintiffs have submitted no evidence that the success of ARNOLD SELECT SANDWICH THINS product is due to the SANDWICH THINS mark.  Nor have they submitted any evidence regarding the recognition of the SANDWICH THINS mark in general.

To the extent Plaintiffs are relying on lost sales for their showing of irreparable harm, it is well settled that monetary injury is not normally considered irreparable.  *See Los Angeles Memorial Coliseum Comm., v. Nat'l Football League*, 632 F.2d 1197, 1202 (9th Cir. 1980).  Additionally, any sales lost by the Plaintiffs that might be occasioned by the EARTHGRAINS 100% NATURAL THINS is just as likely (if not more so) to be caused by the entrance of another player in the market and/or the fact that the EARTHGRAINS product will provide a 100% NATURAL alternative to consumers interested in this attribute in a thin bun.

## D.    THE BALANCE OF THE EQUITIES FAVORS THE DEFENDANTS

The balance of the equities weighs heavily in favor of Sara Lee rather than Arnold.  Plaintiffs argue that Sara Lee's actions "put Arnold's reputation at risk because Arnold will lose control over the use of the SANDWICH THINS mark."  Memo at 16.  However, Sara Lee is not using, and does not intend to use the SANDWICH THINS mark.  *See supra* at 8-9.

Arnold also disingenuously argues that the "only potential harm to Defendants caused by an injunction is a potential delay in launching" their product, and that any burden would be "self-inflicted."  Memo at 16.  Contrary to the Plaintiffs' arguments, Sara Lee will suffer irreparable harm if a preliminary injunction is entered.[7]  Any burden suffered by the Defendants is certainly

---

[7]  It is particularly disingenuous for the Plaintiffs to argue that the issuance of a preliminary injunction would cause only *de minimis* harm and would merely preserve the status quo.  Plaintiffs know full well what goes into launching a new product, since they just recently launched their ARNOLD SELECT SANDWICH THINS product.

23

not "self-inflicted" as Defendants have acted in good faith.  *See supra* at 12-13, 21-22.

        If enjoined, the Defendants would suffer considerable monetary harm and irreparable injury to their reputation and goodwill.  Sara Lee has invested substantial time, money and effort in developing its product and planning the product launch.  Zimmer Decl. at ¶ 28.  Sara Lee has allocated $1 million for the national launch and already spent a significant portion of that sum on the initial western region launch.  Sara Lee has already spent another $550,000 on product development, ingredients, and packaging for the initial launch.  *Id.* at 29-30.  Additionally, Sara Lee anticipates sales of $158,000 per week during the initial 11-week launch period for a total sales of approximately $1.7 million during that time.  *Id.* at 31; Zimmer Decl. ¶ 31; *see also Eli Lilly*, 577 F. Supp. at 487.  Because the product has a shelf-life of 7 days, substantial amounts of product would go to waste if the launch is enjoined.  *Id.* at ¶ 32.  Buns will already have been manufactured and delivered to distribution centers as of the date of the hearing and will have to be thrown out as they cannot be repackaged and sold.  *Id.*  Advertising and promotional materials already prepared and distributed will have to be destroyed, and placement fees forfeited.  *Id.*  It generally takes 3-4 months to develop and manufacture new product packaging and even if Sara Lee could make new packaging in an expedited 10-12 week period, it would require that Sara Lee put many other projects on hold, causing a ripple effect and negatively impacting other ongoing projects.  *Id.* at 33.  A 10-12 week delay in the instant launch would not only result in lost sales in excess of $1.7 million in the West, but would delay planned launches across the country, resulting in additional lost sales of $1.3 million.  *Id.* at 34.

        Defendants would also suffer irreparable damage to their reputation and goodwill, particularly respecting its relationships with retailers and customers.  *Id.* at ¶ 35; *Eli Lilly*, 577 F.Supp. at 487.  Sara Lee would not be able to fill orders already placed.  Zimmer Decl. at ¶ 35.  Retailers have made purchases and shelf-arrangement allocations that depend on this launch.  *Id.*  Retailers would have to hastily revise their plans, which may well impact customer relationships and retailers' willingness to accommodate Sara Lee's future launches.  *Id.*  This is problematic since Sara Lee is planning to launch approximately 30 new products in the remainder of this fiscal year.  *Id.*  Thus, this factor clearly weighs against the entry of the requested injunction.

## IV.     THE REQUESTED INJUNCTION IS NOT IN THE PUBLIC'S INTEREST

Although Plaintiffs argue that preventing confusion serves the public interest, a preliminary injunction is not in the public's interest where, as here, "a party seeks to appropriate to itself alone the use of common English expressions."  *See Citrus Group*, 781 F. Supp. at 393.

## V.     ARNOLD SHOULD POST AT LEAST $5,000,000 FOR BOND

If the Court is inclined to grant a preliminary injunction, the Court should require Arnold to post at least $5,000,000 in bond.  The court may only issue a preliminary injunction "if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c); *see also Nintendo of America, Inc.*, 16 F.3d 1032, 1039 (9th Cir. 2004) (defendant's damages from being wrongfully enjoined exceeded the $15 million amount of the bond).  If Arnold's proposed order is entered, the harm Sara Lee will suffer would include at a minimum, $1 million allocated for the initial launch period, another $550,000 spent on product development, ingredients, and packaging for the initial launch, lost sales of $1.7 million during the initial launch period, another $1.3 million for lost sales from launches around the rest of the country, and lost sales, and incalculable costs for employee hours, for thin buns spoiled for failure to launch or caused by any packaging destruction or changes, and irreparable damage to Sara Lee's reputation, goodwill, and relationships with retailers.  Zimmer Decl. ¶¶ 29-35.

## VI.     CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that this Court deny the Plaintiffs' motion in its entirety and award any other relief that this Court deems just and proper.

Dated:  August 31, 2009                          **FOLEY & LARDNER LLP**


By:   /s/  David E. Kleinfeld
                                DAVID E. KLEINFELD
                                ROBERT S. WEISBEIN

                                Attorneys for Defendants Sara Lee
                                Corporation, Sara Lee Bakery Group, Inc.,
                                and Earthgrains Baking Companies, Inc.

25

1

## <u>CERTIFICATE OF SERVICE</u>

2          The undersigned hereby certifies that a true and correct copy of the above and foregoing

3   document has been served on August 31, 2009 to all counsel of record who are deemed to have

4   consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4.   Any

5   other counsel of record will be served by electronic mail, first class mail, facsimile and/or

6   overnight delivery.

7                                      /s/  David E. Kleinfeld
                                       David E. Kleinfeld
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28